# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS T. YATES,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>J. D. HARTLEY,<br><br>　　　　Respondent.<br>_____/ | 1:10-cv-00424-OWW-SMS (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his 1991 conviction for second-degree murder, with use of a firearm. Petitioner is serving a prison term of fifteen-years-to-life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, Petitioner challenges the Board of Parole Hearings' (Board) September 22, 2008 decision finding him unsuitable for release.

In February 2009, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the 2008 decision by the Board claiming it was not supported

---

[1] This information is derived from the state court documents attached to Respondent's answer, which are not subject to dispute.

by some evidence of his current dangerousness.  On April 1, 2009, the superior court denied the petition in a reasoned decision finding some evidence supported the Board's decision that Petitioner remained an unreasonable risk to public safety.

Petitioner then filed the same claims in habeas corpus petitions to the California Court of Appeal and the California Supreme Court, and both petitions were summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on march 10, 2010. Respondent filed an answer to the petition on July 1, 2010, and Petitioner filed a traverse on July 19, 2010.

## STATEMENT OF FACTS[2]

On June 1, 1990, the victim, a transient, was involved in an altercation with Petitioner's aunt who was using cocaine at the time.  Petitioner's aunt tried to "steal" empty cans and an abandoned shopping cart from the victim.  The victim hit Petitioner's aunt in the face.  Upon learning about the attack on his aunt, Petitioner became enraged.  Feeling that it was his duty to protect his family, Petitioner and his crime partner confronted the victim.  Petitioner admitted that he hit and kicked the victim until he was unconscious.  There were allegations that Petitioner threw a shopping cart at the victim, but he denied doing so.  Unbeknownst to Petitioner or his crime partner, the victim suffered from a heart disease.  As such, the trauma from the fight caused the victim's death.  Petitioner assumes full responsibility for the death of the victim. (Answer, Ex. 2, at 1.)

## DISCUSSION

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive

---

[2] The statement of facts is taken from the superior court's decision of April 1, 2009 which is derived from the 2008 Board hearing.

nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

   (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

   (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

   (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

   Section 2402(d) sets forth the circumstances tending to show suitability which include:

   (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

   (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

   (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

   (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

   (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

   (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

   (7) Age. The prisoner's present age reduces the probability of recidivism.

   (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

   (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

   The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely

deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

///

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

5

central issue of *current* dangerousness when considered in light of the full record before the

///

Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing

Hayward v. Marshall, 603 F.3d at 560).

     A.     *Last Reasoned State Court Decision*

The Los Angeles County Superior Court (last reasoned state court decision) denied the petition finding some evidence to support the Board's decision stating, in pertinent part:

> The Board found petitioner unsuitable for parole after a parole consideration hearing held on September 22, 2008. Petitioner was denied parole for one year. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board relied on several factors, including the commitment offense.
>
> . . . In this case, petitioner and his crime partner, both of whom were healthy young men, attacked the lone victim, who was intoxicated, ill and unable to defend himself. They violently beat him with fists and kicked him until he was unconscious on the ground. Petitioner acknowledged that he would have continued to beat the victim to unconsciousness even if he had known of the victim's poor medical state because he was enraged. Because petitioner exhibited an exceptionally callous disregard for human suffering, there is some evidence that he is especially dangerous.
>
> The gravity of the commitment offense is relevant if it is indicative of the "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." (*In re Shaputis* (2008) 44 Cal.4th 1241, 1255.) There must be a "rational nexus" between the gravity of the commitment offense and petitioner's current dangerousness. (*Lawrence*, supra, 44 Cal.4th at 1213.) Another factor that the Board must consider in determining whether an inmate is suitable for parole is his previous history of violence, especially when he began exhibiting violence at an early age. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(2).) In this case, petitioner's early acts of violence include cruelty to animals when he was arrested for throwing stones at ducks, battery for a school fight on a new student and mayhem when he bit off a man's ear during a fight. He was also convicted of assault with a deadly weapon with great bodily injury after shooting at an inhabited dwelling. Petitioner became a member of the Venice Shoreline Crips at an early age.
>
> The Board acknowledged that petitioner has done extraordinarily well in prison. He has received high praise for his work in welding. He has also been very active in self-help groups. He has realistic plans for parole and a large support network. The Court agrees with the Board that petitioner is on the right path to parole, but finds that his extensive prior record of violence as well as the heinousness of the commitment offense provides some evidence that a longer period of incarceration is necessary. Until then, petitioner remains an unreasonable risk of danger to society.

(Answer, Ex. 2.)

///
///

B.  *2008 Parole Hearing*

At the 2008 hearing, the Board found Petitioner unsuitable for release based primarily on the circumstances of the commitment offense and prior criminal history. As explained in detail below, the superior court's decision finding some evidence to support the Board's decision was a reasonable application of the California standard and was not an unreasonable determination of the facts in light of the record.

The commitment offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering. Petitioner was 18 years old and viciously attacked the victim out of revenge involving a prior fight between the victim and his aunt. The victim was particularly vulnerable as he was intoxicated, living on the streets, and ill at the time of the offense. The victim was forty-six years old at the time and was attacked by Petitioner and his stepbrother who were young healthy men. Both men approached the victim, and Petitioner repeatedly punched and kicked him until he fell to the ground and appeared unconscious (later determined to be dead). The victim never even had the opportunity to defend himself, and he died at the scene of the attack. He suffered three fractured ribs and there were cuts and bruises all over his body consistent with Petitioner's admission that he repeatedly kicked and hit the victim. The cause of death was blunt force trauma to the head as well as a pre-existing heart condition. Based on these circumstances, the fatal attack was certainly carried out in a manner demonstrating a callous disregard for human suffering.

Furthermore, Petitioner's criminal career began when he was just 14 years old. Petitioner engaged in violent acts at an early age, including cruelty to animals, battery on a fellow school student, mayhem by bitting another's ear off during a fight, and assault with a deadly weapon involving great bodily injury after shooting at an inhabited dwelling. Cal. Code Regs. tit. 15, 2402(c)(2). In addition, he joined the Vi Gang at the age of 14 and was a member at the time of the commitment offense. Although the commitment offense was not gang-related, it certainly demonstrated the violent mentality of the Vi Gang members reputation.

On this record, the heinous nature of the commitment offense and Petitioner's prior violent criminal history which began at a very early age, remain predicative of his present danger of risk to public safety is released, and the superior court's determination was not an unreasonable determination of the some evidence standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 31, 2010**          /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE